IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

SANDRA FOWLER

    Plaintiff,

v.                             Case No.: GJH-15-1084

WELLS FARGO HOME MORTGAGE,
INC., *et al.*

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Sandra Fowler purchased a home in Prince George's County, Maryland on March 30, 2006. *See* ECF No. 2 at ¶¶ 1, 20. According to Plaintiff, Defendant Mid-Atlantic Builders of Beechtree, Inc. ("Mid-Atlantic") was the homebuilder, Defendants Southern Trust Mortgage Company, Inc. ("Southern Trust") and Dennis Sullivan were the lenders, Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo") was the escrow agent, and Defendant Village Settlements, Inc. ("Village Settlements") conducted the closing. *See id.* at ¶¶ 12– 20. Plaintiff filed for bankruptcy in October 2013 and March 2014 and both cases were dismissed. *See id.* at ¶¶ 34–35. Wells Fargo later initiated a foreclosure proceeding in the Circuit Court for Prince George's County, Maryland. *See id.* at ¶ 40. The home was scheduled to be sold on March 20, 2015; however, the circuit court has stayed the foreclosure sale while it considers Plaintiff's motions for temporary restraining order ("TRO"), preliminary injunction, and permanent injunction. *See* ECF No. 16-1.

In the meantime, Plaintiff filed a complaint against Defendants in the Circuit Court for Prince George's County, which was removed to this Court. *See* ECF No. 1. Plaintiff alleges that

Defendants engaged in "predatory lending and targeting minorities in a pattern and scheme that would eventually strip minority buyers of their down payments, mortgage payments and ultimately their home." ECF No. 2 at ¶ 17. Currently pending before this Court is Plaintiff's Motion for TRO and preliminary injunction to prevent Defendant Wells Fargo from selling Plaintiff's home in the foreclosure sale.[1] *See* ECF No. 3 at 21. A hearing is unnecessary. *See* Local Rule 105.6. For the reasons explained below, Plaintiff's motion is DENIED.

## I.   BACKGROUND

Plaintiff alleges that in 2006 she became interested in purchasing a home that was built by Defendant Mid-Atlantic and located at 2410 Moores Plains Boulevard, Upper Marlboro, Maryland. *See* ECF No. 2 at ¶¶ 1, 12. Defendant Mid-Atlantic "steered the Plaintiff to Defendants [lenders] Sullivan and Southern Trust." *Id.* at ¶ 14. On or about March 30, 2006, Defendant Village Settlement conducted the closing with Sullivan and Southern Trust as the lender and Defendant Wells Fargo as the escrow agent. *See id.* ¶ 20. The mortgage amount was $952,130.32. *See id.* at ¶ 22. At the time of the closing, Plaintiff's monthly income was $12,283 and her expenses were $1,455. *See id.* at ¶ 23 & p. 23. Defendants offered Plaintiff a five-year interest only payment and an adjustable rate mortgage. *See id.* at ¶ 24.

At the closing, Defendants failed to provide Plaintiff with certain loan documents as required by several federal laws. *See id.* Specifically, Defendants did not provide Plaintiff with the handbook on adjustable rate mortgages, a good faith estimate, a booklet on closing costs, an initial servicing transfer disclosure, notice of the right to receive copy of the appraisal, an Equal Credit Opportunity Act notice of home application, or the "Consumer Information and Privacy

---

[1] While Plaintiff titles her motion a "Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction," she limits the issue to whether she should receive a TRO and preliminary injunction. *See* ECF No. 3 at 5. Indeed, she concludes by only requesting a TRO. *See id.* at 16.

Policy." *See id.* at ¶ 25. Further, Plaintiff alleges, the loan was an "improvident extension of credit" in violation of federal and state unfair or deceptive practices laws. *See id.* Immediately after the closing, Southern Trust transferred the mortgage to Defendant Wells Fargo. *See id.* at ¶ 28. Wells Fargo then sold the loan to a "Mortgage Backed Securities ("MBS")," which, Wells Fargo told Plaintiff, "does not give the borrowers any flexibility to change or qualify for government modification programs." *Id.* at ¶ 29. Plaintiff additionally claims that Defendants provided a cash incentive for loan officers to "aggressively market subprime mortgages in minority neighborhoods." *Id.* at ¶ 27. Defendants are alleged to have referred to those in minority neighborhoods as "mud people" and referred to subprime loans as "ghetto loans." *See id.*

Plaintiff lost her job on September 28, 2007, when the company where she had been employed ceased operations. *See id.* at ¶ 30. After exhausting over $300,000 in savings, Plaintiff fell behind in her mortgage payments. *See id.* at ¶ 31. Plaintiff asserts that Wells Fargo offered a modification that was an unfair "ruse." *See id.* at ¶ 33. Plaintiff alleges that she should have been eligible for the United States Treasury Department's reduction program, but that she learned for the first time on December 18, 2014, that Defendant Wells Fargo provided her with a loan that did not qualify her for any government modification. *See id.* at ¶¶ 36–38.

Plaintiff filed for bankruptcy twice, once in October 2013 and once in March 2014. *See id.* at ¶¶ 34–35. On both occasions, the bankruptcy was dismissed because Plaintiff was not able to make the required payments to the bankruptcy trustee. *See id.* Plaintiff's home went into foreclosure and Wells Fargo scheduled the sale of the property for March 20, 2015. *See id.* at ¶ 40. Plaintiff filed a motion to stay the foreclosure in the Circuit Court for Prince George's County and the motion was granted. *See* ECF No. 16-1.

In this case, Plaintiff alleges six counts—a request for injunctive relief, violation of the Racketeering Influenced and Corrupt Organization ("RICO") Act, Fraud, Violation of the Real Estate Settlement Procedure Act ("RESPA"), Violation of the Truth in Lending Act ("TILA"), and unfair and deceptive trade practices under the Federal Trade Commission Act ("FTCA"). *See* ECF No. 2 at ¶¶ 42–74. Currently pending before this Court is Plaintiff's Motion for TRO and preliminary injunction against Wells Fargo. *See* ECF No. 3. Wells Fargo opposes the motion. *See* ECF No. 29.

## II. STANDARD OF REVIEW

The purpose of a temporary restraining order ("TRO") or a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). The grant of a TRO or a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)) (internal quotation marks omitted). Thus, the burden placed upon Plaintiff to state a claim for a TRO is high. The Supreme Court and the Fourth Circuit recognize four requirements that a party must show to be granted a TRO or preliminary injunction:

> (1) there is a likelihood of success on the merits; (2) there is a likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in movant's favor; and (4) the injunction is in the public interest.

*The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20); *see also Dewhurst*, 649 F.3d at 290 (reaffirming the four

requirements). All four of these requirements must be met in order for a TRO or preliminary injunction to be granted. *See Dewhurst*, 649 F.3d at 290.

### III. DISCUSSION

Plaintiff asserts that she has a "high probability of success." *See* ECF No. 3 at 14. In support, she makes several conclusory statements. She states that "Defendants are barred by law not to make predatory loans, violate laws in making such loans[,] and are barred from unilaterally placing a mortgage in a non-modifiable security backed instrument." *Id*. Plaintiff claims that "[v]irtually all the Defendants' actions in formulating the Plaintiff's mortgage and in further prohibiting the Plaintiff from qualifying for a government backed mortgage relief program are illegal and deceptive trade practices." *Id.* Importantly, however, Plaintiff does not address how success on the merits of her claims would entitle her to a permanent injunction preventing foreclosure.

Plaintiff also fails to address the timing of her claims. All of Plaintiff's allegations stem from Defendants' actions in 2006, and, thus, appear to be barred by the relevant statute of limitations periods. First, Plaintiff alleges that Defendants violated the RICO Act. There is a four-year statute of limitations period for civil RICO actions. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188–89 (1997) (citing *Agency Holding v. Malley Duff and Assocs., Inc.*, 483 U.S. 143, 156 (1987)). Here, Plaintiff alleges that the action giving rise to her RICO claim occurred in 2006, when she obtained the relevant mortgage. *See* ECF No. 2 at ¶¶ 12–41. Plaintiff has given no indication as to why the statute of limitations should be tolled in this case. To the extent Plaintiff suggests that she was unaware that Defendants' actions violated laws until recently, the Court notes that, in a civil RICO case, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Klehr*, 521 U.S. at 194. Further, it is the Plaintiff's knowledge of her

own injury that controls the running of the statute of limitations, and not Plaintiff's knowledge of the underlying RICO pattern. *See Rotella v. Wood*, 529 U.S. 549, 556–57 (2000).[2] Plaintiff has provided no rationale for why she was unable to discover her injury through due diligence, and the Court will not read a rationale into Plaintiff's motion. Thus, on these facts, the Court cannot find that Plaintiff is likely to succeed on her RICO claim.

Plaintiff also alleges that Defendants committed fraud in 2006 when they violated numerous laws in not providing plaintiff with several documents and not explaining certain details of Plaintiff's mortgage. *See* ECF No. 2 at ¶¶ 62–69. The statute of limitations for a civil action under Maryland law is three years from the date it accrues. *See* Maryland Code, Courts and Judicial Proceedings Article ("CJP") § 5-101. Notably, this period can be extended if there is ignorance of the cause of action induced by fraud. In that case, "the cause of action shall be deemed to accrue at the time when the party discovered, or by exercise of ordinary diligence should have discovered the fraud." *See* CJP § 5-203. Here, as with her RICO claim, Plaintiff has

---

[2] Even if the statute of limitations was tolled, the Court would still be concerned over whether Plaintiff is likely to succeed on her RICO claim. RICO is "'a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted). Section 1962 of the RICO Act, which Plaintiff relies on, provides that: "(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Violation of § 18 U.S.C. § 1962 requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" is defined as any of a number of predicate criminal acts, including mail fraud, wire fraud, and interstate transport of money fraudulently obtained. *See* 18 U.S.C. § 1961(1)(B). Here, while Plaintiff alleges fraud, she has not noted which of the predicate acts make up her RICO claim. Further, a pattern of racketeering requires at least two predicate acts. *See* 18 U.S.C. § 1961(5). To establish a pattern of racketeering activity, the plaintiff must establish that (1) the predicate acts are related, and (2) they pose a threat of continued criminal activity. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, Plaintiff alleges that Defendants "target[] minorities with 'ghetto loans.'" ECF No. 2 at ¶ 58. However, Plaintiff only asserts one occasion of alleged fraud, the sale of her own property. *See id.* at ¶¶ 12–41, 57 & 60.

not even suggested that she was unable to discover the fraud within three years of the sale of the property in 2006 (the action giving rise to her claim). *See Doe v. Archdiocese of Wash.*, 689 A.2d 634, 643 (Md. Ct. Spec. App. 1997) ("the complaint relying on the fraudulent concealment must also contain specific allegations of how the fraud kept plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite plaintiff's diligence.") (citations omitted). Thus, the Court also cannot find that Plaintiff is likely to succeed on her fraud claim.

Plaintiff also alleges violations of RESPA and TILA. *See* ECF No. 2 at ¶¶ 70–73. Specifically, Plaintiff alleges that, in violation of RESPA, she was not provided with a good faith estimate, a booklet on closing costs, or an initial servicing transfer disclosure; and in violation of TILA, she was not provided with a handbook on adjustable rate mortgages. *See id.*

As to the RESPA violations, first, there is no private cause of action under RESPA for failure to provide a good faith estimate or a booklet on closing costs. *See Grant v. Shapiro & Burson, LLP*, 871 F.Supp. 2d 462, 470 (D. Md. 2012) (explaining that failure to provide "Special Information Booklet" and "Good Faith Estimate" are not covered by RESPA). Thus, Plaintiff is unlikely to succeed on these claims. Second, the remaining alleged RESPA violation, failure to provide an initial servicing transfer disclosure, must be brought within three years from the date of the violation. *See* 12 U.S.C. § 2614. Here, Plaintiff indicates that her loan was transferred "immediately after the closing and the Plaintiff made the first payment." ECF No. 2 at ¶ 28. Thus, this claim is likely time-barred.

As for the TILA violations, the statute of limitations for claims for monetary damages arising under TILA, which are the damages requested here, is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "This limitations period begins to run when

the borrower accepts the creditor's extension of credit." *Grant*, 871 F.Supp. 2d at 472 (citations omitted). Here, the credit was extended in 2006 and Plaintiff does not argue against application of this limitations period in her TRO motion. Further, although equitable tolling may apply in RESPA and TILA claims, "setting aside the statute of limitations as to such claims is no easy task." *See id.* at 470 n. 10 & 472 n. 14 (internal quotation marks, brackets, and citations omitted). To do so, Plaintiff must show fraudulent concealment and the "inability of the plaintiff, despite due diligence, to discover the fraud." *Id.* at 470 n. 10. As these violations allegedly took place in March 2006, and Plaintiff makes no argument for equitable tolling, they are likely to be found time-barred and Plaintiff is unlikely to succeed on these claims.

Plaintiff is also unlikely to succeed on her final count, unfair and deceptive trade practices under the FTCA. For one, this claim is based on violations of TILA, which the Court has already found would be unlikely to succeed. Additionally, the FTCA "does not contain a private right of action and cannot provide a basis for a claim by an individual." *Muncy v. Centex Home Equity Co., L.L.C.*, 1:14 CV 00016, 2014 WL 3359335 at *2 (W.D. Va. July 9, 2014) (citing *Reilly v. Bank of Am.*, No. 3:13–cv–329–RJC–DSC, 2014 WL 198315, at *2 (W.D.N.C. Jan. 15, 2014)) (internal quotation marks and additional citations omitted). As Plaintiff is unlikely to succeed on the above counts, she is also unlikely to receive injunctive relief preventing the sale of her property, which is count one of her complaint. *See* ECF No. 2 at ¶¶ 42–52. Given the finding that Plaintiff has failed to demonstrate a likelihood of success on her claims, she is not entitled to a TRO or a preliminary injunction. *See Dewhurst*, 649 F.3d at 290

(explaining that each of the four TRO requirements must be met for the Court to grant that relief).³

## VI. CONCLUSION

Accordingly, for the aforementioned reasons, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No.3, is DENIED.

A separate Order shall issue.

Dated: May 13, 2015

George Jarrod Hazel
United States District Judge

---

³ Citing out-of-date case law, Plaintiff incorrectly states that the likelihood of success test is displaced if Plaintiff's harm is greater than Defendant's harm. *See* ECF No. 3 at 13. Having found that Plaintiff is not likely to succeed on the merits, the Court will not address the remaining requirements.